## MORSE v. PESANT.

December, 1865.

Affirming 7 *Bosw.* 199.

The acceptance of a cargo of goods by a consignee is an adoption by him of the contract under which the goods are transported, and renders him liable in damages for a breach of an express stipulation that the cargo may be discharged according to the custom of the port.

Although *demurrage* strictly cannot be claimed where no provision is made for it in the contract, damages in the nature of demurrage may be recovered from the consignee for his detention of the vessel beyond the usual time allowed for the discharge of the cargo.

The fact that other cargo was shipped by the same vessel to other consignees, does not affect the liability of the defendants for demurrage.

Richard, Alden, John G., and J. Parker Morse, sued Joseph A. and Manuel Pesant, in the New York superior court, to recover demurrage.

The plaintiffs were owners of the ship "Jane Parker," and at Havana agreed in writing with Hamel & Co., as freighters, who acted for the firm of Pesant Brothers, the defendants, to receive on board the "Jane Parker," at Cienfuegos, a cargo of sugar, to be carried to and delivered at New York. The charter-party contained these clauses: "The said vessel being so loaded, Captain Ruckman shall, with all possible dispatch, make sail, . . . . . and on his arrival at the port of discharge, make a true and faithful delivery of the cargo, according to custom and the bills of lading. In consideration whereof, freight shall be paid on unloading and right delivery of the cargo," at a specified rate. "The lay days shall be as follows: Twenty-five running days allowed to load the vessel at Cienfuegos, to count from the time she is ready to receive cargo, after the expiration of which time demurrage shall be paid at the rate of fifty dollars for each and every day, as it may become due. The cargo shall be taken in and discharged according to custom of the respective ports of loading and discharging."

The bills of lading, after the usual clause requiring the

Morse *v.* Pesant.

delivery in good order, &c., to the defendants, contained this clause: "he or they paying freight for the said goods, as per charter-party, without primage and average accustomed."

The custom of the port of New York, as proved by the evidence on the trial, was, on arriving at the port, to enter the ship at the custom-house, put her on the five-day book, and notify the consignee; and if he should see fit to get out his permits before the five days were out, the master could go on and discharge at once on getting the permits; if he did not, then at the end of the five days, which merchants usually made seven days, the master was entitled to a general order from the custom-house; under the general order the master could go to discharging the cargo, but if the goods were dutiable they must be put into a bonded warehouse, unless the consignee would pay the duties; if the consignee paid the duties, the master could discharge anywhere, but if he he did not pay the duties the goods could only go into the bonded warehouse; and if the consignee did not get a permit for a bonded warehouse where the cargo could be received, the master could not discharge, but was detained by this act of the consignee, with the cargo on board.

The ship arrived in New York on May 30, and under a new tariff which was to go into effect on July 1, the duties on her cargo would have been very much reduced.

The defendants in this case got a permit for a bonded warehouse, which would entitle the master to commence discharging by the eighth day; but there was no room to receive the cargo in that warehouse. The master notified the consignees, the defendants, that demurrage would be claimed for every day that the vessel was subsequently detained; and it was actually detained eighteen days beyond the seven days allowed by the custom of the port.

It appeared, also, that another freighter shipped a large quantity of sugar for the same voyage, consigned to other consignees in New York.

*The superior court,* on appeal from a judgment for the plaintiff on a verdict rendered by the jury, held, that if the vessel had been discharged according to the custom of the

port, delay would not have taken place, and that the judge was correct in instructing the jury that if the vessel by ordinary due diligence of the consignees might have begun discharging on the eighth or ninth day after her arrival, they might award demurrage against the defendants, after allowing a reasonable number of days for completing the unloading.

As to the objection that Hamel & Co., who were named in the charter-party, and not defendants, were liable, they held, that as defendants received the cargo, they were liable as consignees for the freight;—citing Merian *v.* Funck, 4 *Den.* 110; Cock *v.* Taylor, 13 *East*, 399; Proch *v.* Duval, 4 *Wash. C. Ct.* 184; N. Y. & H. S. Co. *v.* Young, 3 *E. D. Smith*, 187; *Abbott on Ship.* 310, and cases.

*W. H. Anthon*, for the defendants, appellants.—That the instrument called a charter-party was not such, but simply a covenant of affreightment;—cited Clarkson *v.* Edes, 4 *Cow.* 476, and cases there cited; *Holt on Ship.* 320. That the master had full control, and could have discharged in any safe place, giving the consignees notice. Hallet *v.* Col. Ins. Co., 8 *Johns.* 276; Ostrander *v.* Brown, 15 *Id.* 39. That the bonded warehouse system constituted a part of the custom of the port. 3 *Minot's U. S. Stat. at L.* 469; 9 *Id.* 53; 10 *Id.* 270; Rodgers *v.* Forresters, 2 *Camp.* 483; Burmester *v.* Hodgson, *Id.* 488. That the consignees were not liable for demurrage, not having bound themselves by an express covenant. *Abb. on Ship.* 304; Robertson *v.* Bethune, 3 *Johns.* 342; opinion of Judge BETTS, in Sprague *v.* West, 1 *Abb. Adm.* 553; *Valin Comm.* 649, 650; *Holt on Ship.* p. 3, c. 1, § 25. That the ship being a general ship, no demurrage was chargeable to these consignees. Robertson *v.* Bethune, 3 *Johns.* 342.

*Dexter A. Hawkins*, for plaintiffs, respondents;—Cited Harmon *v.* Gandolphi, *Holt N. P.* 35; *Abb. on Ship.* 310; Merian *v.* Funck, 4 *Den.* 110; N. Y. & H. S. Nav. Co. *v.* Young, 3 *E. D. Smith*, 187; 1 *Pars. Mar. Law*, 261, and n. 3; *Id.* 262, and note 3; *Id.* 266, and note 3; Clendaniel *v.* Tuckerman, 17 *Barb.* 184; *Id.* 190; Sprague *v.* West, 1 *Abb. Adm.* 548; 1 *Pars. Mar. Law*, 262; *Abb. on Ship.* 307; Duffie *v.* Hayes, 15

*Johns.* 327; *Pars. Mar. Law,* 262, and n. 5; Duff *v.* Lawrence, 3 *Johns. Cas.* 162; Randall *v.* Lynch, 2 *Campb.* 356; Leer *v* Yates, 3 *Taunt.* 387; Barker *v.* Hodgson, 3 *M. & W.* 267; Hill *v.* Idle, 4 *Campb.* 327; *Abb. on Ship.* 308 to 311; Rupp *v.* Lobach, 4 *E. D. Smith,* 69; Bessey *v.* Evans, 4 *Campb.* 131.

PORTER, J.—The acceptance of a cargo of goods by the consignee, is a recognition of his liability to the shipowner. The contract under which the property was transported becomes his by adoption, and when he avails himself of its provisions so far as they inure in his favor, he is charged with the correlative obligations which spring out of it, whether by mere operation of law or by the force of express stipulations.

In this case, the ship was chartered by the consignees in the name of parties who were acting in their behalf. The bill of lading referred in terms to the charter-party, and the defendants were the holders of both, when the vessel arrived at the port of New York. By express stipulation the cargo was to be discharged according to the custom of that port. On the trial it was proved and found, that by such custom it was the duty of the consignees to be in readiness to receive the cargo, at the expiration of seven days after notice of the ship's entry. In order to avail themselves of a prospective reduction in the rate of duties, they chose to detain the vessel for an additional period of eighteen days, before permitting the cargo to be discharged. This delay was unauthorized, and the shipowners were entitled to redress.

It is true that strict demurrage cannot be claimed where no provision is made for it in the contract; but it is a familiar and settled principle of maritime law, that the party aggrieved may recover damages for detention, in the nature of demurrage, against a consignee who admits his obligation to receive the property, but to promote his own interest or convenience, detains the ship beyond the period contemplated in the contract. Clendaniel *v.* Tuckerman, 17 *Barb.* 184, 190; *Abb. on Ship.* 311; Harman *v.* Gandolph, *Holt N. P.* 35; 1 *Pars. Mar. Law,* 262, note 3, and authorities there cited.

The authorities which are supposed by the appellants to favor an opposite view have not been overlooked; but they are

inapplicable to a case like this, where the detention was in breach of a known custom, by which the parties agreed to be bound.

The fact that a portion of the cargo was shipped to other consignees constitutes no defense to the action. Hill *v.* Idle, 4 *Campb.* 327; Leer *v.* Yates, 3 *Taunt.* 387.

The judgment should be affirmed.

BROWN, J.—The charter-party and the bills of lading upon the shipment of the goods were executed at one and the same time in regard to the same transaction, and together express the true nature of the contract and the obligations of the parties under it. The cargo was to be taken in and discharged according to the custom of the respective ports of loading and discharging—that is, the ports of Cienfuegos and New York. The sugars were to be delivered in good order and condition at the latter port to Messrs. Pesant Brothers, the defendants, they paying the freight therefor, as per charter-party. Thus, the payment of the freight was the condition of the delivery of the goods; and, whenever the consignees accepted the goods, they thereby became parties to the contract, incurring the obligation to pay the freight and the demurrage for unnecessary and improper detention, if any accrued to the owners of the vessel. The plaintiffs proved what was the custom of the port of New York, which allowed the consignees seven days after the arrival of the vessel to provide for the discharge of the cargo. And they also proved the time the vessel was delayed beyond that period, in consequence of the goods being put in bond and sent to a bonded warehouse. To pay the duties and have these goods discharged in the usual way, or to put them in bond under the acts of Congress, was entirely at the option of the consignees. To adopt the latter course was a deviation from the general custom; and, as it entailed delay to the vessel beyond the usual time allowed for the discharge of the cargo, it certainly presents a just and equitable claim for compensation in the form of demurrage. The judge, upon the trial, submitted the question of the existence of the customary mode of discharging cargoes from vessels in the port of New York, as well as the question of delay, to the jury, directing

them that, if they found both in favor of the plaintiffs, they were entitled to recover demurrage to the extent of fifty dollars a day, that being the sum fixed by the charter party for delay at the port of Cienfuegos, as well as proved to be the fair value or compensation for detention in New York. This charge covered the whole case, and properly disposed of the numerous requests to charge made by the defendants at the close of the trial. The jury found a verdict for the plaintiffs for nine hundred dollars, upon which judgment was rendered in the superior court, which, I think, should be affirmed.

All the judges concurred, except POTTER, J., absent.

Judgment affirmed, with costs.