## Case No. 11,090.

### PHILADELPHIA & R. R. CO. v. NORTHAM.

[2 Ben. 1.] [1]

District Court, S. D. New York. Nov., 1867.

BILL OF LADING—DEMURRAGE—USAGE—INTEREST.

1. Where a bill of lading specified that the vessel was bound "for Catharine street, East river, New York," and also contained a clause as follows: "demurrage $10 a day after four days," and, on the arrival of the vessel at Catharine street, it was not possible to discharge her there, owing to the wharf being out of repair, and the consignee thereupon ordered her to go to Dover street, and she went and was unable to discharge her cargo, owing to there being so many vessels there that she could not get a berth, until thirteen days had elapsed; and where another bill of lading between the same parties described the boat as "bound for New York, instructions at New Brunswick," and had a similar provision as to demurrage, and the consignee sent her instructions at New Brunswick to go to Dover street, whither she went and was detained for the same cause for sixteen days; and the owners of the boats sued the consignee for demurrage, and he set up that, by usage, the clause as to demurrage meant that the boat should only be entitled to demurrage, if detained more than four days after she had got a berth: Held, that where the consignee of a cargo requires it to be taken to a particular place, he ought to be held liable for any delay caused at that place, for which the vessel cannot be shown to be directly chargeable.

[Cited in The Glover, Case No. 5,488; Robbins v. Welsh, Id. 11,887; Crawford v. Mellor, 1 Fed. 640; Fish v. One Hundred and Fifty Tons of Brown Stone, 20 Fed. 202; Melloy v. Lehigh & W. Coal Co., 37 Fed. 379; McLeod v. Sixteen Hundred Tons of Nitrate of Soda, 55 Fed. 530.]

2. No usage ought to be allowed to vary a plain contract for demurrage, under such circumstances.

3. The consignee, therefore, was bound to pay demurrage after four days from the arrival of the vessel at the specified place of delivery, with interest on it from the day when it was demanded.

This was a libel [by the Philadelphia & Reading Railroad Company against William L. Northam] to recover freight and demurrage on two cargoes of coal, shipped from Philadelphia to New York, on board of canal boats belonging to the libellants, one by boat No. 58, and the other by boat No. 75, under bills of lading

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

signed therefor by the masters of the boats. In the case of No. 58, the boat was described in the bill of lading as "bound for Catharine street, East river, New York;" the quantity of coal was 204 tons; and the bill of lading engaged to deliver the coal to the respondent, he paying freight at $1.60 per ton, and "demurrage $10 per day after four days." In the case of No. 75, the boat was described in the bill of lading as "bound for New York, instructions at New Brunswick;" the quantity of coal was 215 tons; and the bill of lading engaged to deliver the coal to W. J. Harlan or his assigns (the respondent being the assignee), he or they paying freight at the rate of $1.60 per ton, "demurrage $10 per day after four lay days." No. 58 arrived at Catharine street, and her arrival was duly reported on the same day by her captain to the respondent, who ordered her to go to Dover street, where she was detained in all for thirteen lay days after her arrival was so reported. The libellants claimed nine days' demurrage. The detention was caused by her being obliged to wait her turn at Dover street for a berth to discharge her cargo. No. 75 received instructions at New Brunswick from the respondent to go to Dover street, New York, and went there, and her arrival was reported to the respondent, and she was thereafter detained there, waiting for a berth and discharging, for sixteen lay days, for which the libellants claimed twelve days' demurrage. The answer set up that, when No. 58 arrived at Catharine street, the pier there could not be used to discharge cargoes, because it had been closed by the public authorities as out of repair; that for the mutual benefit of both parties, and by agreement, the boat was taken to Dover street and discharged; that she was discharged as soon after she arrived at Dover street as a berth could be obtained; that she was fully discharged within three days after she obtained a berth; that, by an established and well known custom, the lay days referred to in the bill of lading did not begin to run till the boat had obtained a berth; and that the captain of the boat did not offer to deliver the coal till he had obtained a berth. The answer also set up that No. 75 was instructed at New Brunswick to go to Dover street; that she commenced discharging as soon after she arrived there as she could obtain a berth, and was fully discharged within three days thereafter; that the custom before mentioned existed; and that the captain of the boat did not offer to deliver the coal till he had procured a berth.

Benedict, Tracy & Benedict, for libellants.
C. Morris, for respondent.

BLATCHFORD, District Judge. In regard to No. 58, she was bound by the contract to go to Catharine street. She went there and was then ordered by the respondent to go to Dover street, and she then went there. Undoubtedly, the respondent ordered her to the place where he thought she could be most quickly discharged. But, by the contract, the whole duty of the libellants was discharged in taking the cargo to Catharine street, and notifying the respondent of its arrival, and awaiting his orders. This was done. The plain interpretation of the provision of the contract, "demurrage $10 per day, after four days," is demurrage $10 per day, after four days from the time the vessel arrives at Catharine street with the cargo, and her captain notifies the respondent of his arrival. So, too, No. 75 was bound to go to the place where she should receive instructions at New Brunswick to go, and it being shown that she was at New Brunswick instructed to go to Dover street, the contract stands as if Dover street had been originally inserted in it as the place of destination. Her arrival at Dover street having been notified by her captain, the same observations apply as in the case of No. 58.

The proof as to a custom or usage, that the words, "after four days," and "after four lay days," mean, "after four lay days from and after the time when the boat gets a berth, so that she can commence discharging her cargo," does not establish any such custom or usage. The burden of proving such a custom is on the respondent, and he has failed to make out any such custom. Besides, I do not think the evidence as to such a custom has any reference to bills of lading like those in this case, where, by the terms of the contract, the cargo is to be delivered at a particular place. It might, perhaps, apply to a contract where the cargo was deliverable generally at New York. The usage, if made out and applied to bills of lading like those in this case, would throw on the owner of the vessel the loss by delay in getting a berth, when he had no discretion as to the selection of one, but was bound to deliver at a particular dock. This would be unreasonable. Where the contract is for delivery generally at New York, there ought to be a propriety in throwing on the owner of the vessel the burden of finding a place to discharge the cargo, and in holding that the days allowed to discharge it, by the contract, did not begin to run till the place had been found, so that the consignee could actually receive the cargo, and in allowing evidence of a custom to that effect. But, where the consignee of the cargo requires it to be taken to a particular place, he ought to be held liable for any delay caused at that place, with which the vessel cannot be shown to be directly chargeable, and no usage ought to be allowed to vary a plain contract to that effect.

In the present case, it is shown, in regard to No. 58, that the respondent was notified, two days before the boat arrived at Catharine street, that it would be impossible for her to discharge there because of the condition of the dock, and that there was then abundant time for him to have sent instructions to the

boat at New Brunswick, ordering her to go to Dover street, and that, if he had done so at that time, instead of waiting until she arrived at Catharine street, she would have got a berth at Dover street several days sooner than she did, and probably, on the evidence, soon enough to have caused no delay beyond the four days after her arrival at Dover street, and thus there would have been no claim for demurrage. Therefore, in any aspect of the case, the respondent would be chargeable with the delay in discharging No. 58.

The libellants are entitled to a decree for $90 demurrage on No. 58, being for nine days, at $10 per day, and for $120 demurrage on No. 75, being for 12 days, at $10 per day, with interest thereon from the date when a demand was made for it.