THACHER (AYER v.). See Case No. 684.

## Case No. 13,850.

### THACHER v. BOSTON GAS LIGHT CO.

[2 Lowell, 361.] [1]

District Court, D. Massachusetts.   Dec., 1874.

#### DEMURRAGE—QUICK DESPATCH—CUSTOM.

1. An agreement for quick despatch supersedes any custom of discharging vessels by which they are to take their turn at the wharf.

[Cited in Lindsay v. Cusimano, 12 Fed. 507; Mott v. Frost, 47 Fed. 84; Sixteen Hundred Tons of Nitrate of Soda v. McLeod, 10 C. C. A. 115, 61 Fed. 851.]

2. The naming a wharf in the charter party, containing such a stipulation, amounts to an undertaking that the wharf shall be unincumbered.

[Cited in Moody v. Five Hundred Thousand Laths, 2 Fed. 607; Lindsay v. Cusimano, 12 Fed. 505; Williams v. Theobald, 15 Fed. 470; Mott v. Frost, 47 Fed. 84.]

3. Semble, that a charterer has the right to name any suitable and convenient wharf which, when named, stands as if the name had been inserted in the charter party.

4. The proviso against liability for detention, unless "by default" of the charterer, exempts him only from delay from causes beyond his control acting directly to retard the discharging.

[Cited in Williams v. Theobald, 15 Fed. 471; McLeod v. Sixteen Hundred Tons of Nitrate of Soda, 55 Fed. 530.]

The libellant [L. Thacher], as master and part owner of the schooner, Charles E. Gibson, chartered her to the respondents, to bring a cargo of coal from the Albion Mine, at Pictou, Nova Scotia, to Boston. The charter party contained the following stipulations: "It is agreed that the lay days for loading and discharging shall be as follows (if not sooner despatched), commencing from the time the vessel is ready to receive or discharge cargo. *Vessel to take her turn in loading, as customary, at Albion Coal Company, and quick despatch discharging;* and that, for each and every day's detention by default of said party of the second part or agent, *fifty* dollars per day, day by day, shall be paid by said party of the second part or agent, to the said party of the first part or agent." The words in italics were written; the others were in the printed form of the charter party. The schooner arrived at the respondent's wharf, in Boston, with a full cargo of six hundred and eighty-four tons of coal, on Sunday, August 2, 1874, and was ready to discharge on the next day. No berth was ready, and the discharge of the cargo was not begun until the 13th of August, and it was finished on the 19th. The answer alleged, and there was evidence

tending to show, that the respondents had suitable accommodations for receiving the different kinds of coal at their wharf, which were sufficient for ordinary occasions; that they always endeavored to charter vessels at such times that they would not interfere with each other, and had done so at this time, but other vessels happened to arrive just before the libellant's schooner. It appeared that there was room for the schooner somewhat sooner at another part of the wharf, but that it would have been inconvenient to the company to take this sort of coal there; that the libellant had brought a cargo to that wharf a short time before this charter party was made; and that the schooner was very long in proportion to her carrying capacity, which caused a part of the delay. The suit was for nine days' detention, at the agreed rate.

J. C. Dodge, for libellant, cited Davis v. Wallace [Case No. 3,657].

C. P. Greenough, for respondents.

LOWELL, District Judge. The case of Davis v. Wallace [Case No. 3,657], decided by Clifford, J., in the circuit court for this district, in 1868, holds that an agreement for quick despatch overrides any customary mode of discharging vessels, by which they are to take their turn at the wharf. A similar decision has, since that time, been made in the Southern district of New York. Keen v. Audenried [Id. 7,639]. The only distinction taken at the argument between the former case and this is, that the charter party in Davis v. Wallace [supra], did not designate the wharf for discharging; while here, the wharf being named, the usages of its owners may be presumed to be known, and to have been impliedly provided for. This difference will not support a distinction in the judgment on this point; because a charterer has an undoubted right to name any suitable and convenient wharf, and, when it is named, the contract stands as if the name had been inserted in the charter party. Tapscott v. Balfour, L. R. 8 C. P. 46. The learned judge in Davis v. Wallace, recognizing this right, held that an unincumbered wharf ought to be named; but the meaning was that the naming a wharf was a warranty that a berth could be had there. So here, the contract amounts to an undertaking that the respondents' wharf shall be unobstructed.

This construction is somewhat aided, as was argued for the libellant, by the written words and their collocation; by which, after providing for the schooner taking her turn at Pictou, the expression is immediately varied, and quick despatch is agreed upon for Boston.

The remaining question is, whether the proviso, that demurrage is to be paid only if the detention is "by default" of the respondents, relieves them from responsibility.

This proviso is usual in Boston charter parties, and perhaps not in others. It has been construed in three cases which have come to my notice. In Towle v. Kettell, 5 Cush. 18, it was held that a detention at quarantine, by order of a foreign government, was not by default of the charterer. In The Mary E. Taber [Case No. 9,209], it was proved, that, by the custom of the port of discharge, the charterer had a right to order the deck load to be delivered at one pier, and the remainder of the cargo at another; and time was lost in taking the vessel to the second pier, and the detention was alleged by the master to have been occasioned by bad weather. It was held that this delay was not by default of the charterer. The third case is Davis v. Wallace, above cited, where Clifford, J., said that the stipulation for quick despatch excluded all delay save the time employed in discharging, except what was occasioned by natural causes beyond the control of the party so contracting.

These three decisions are not inconsistent with each other; and they mean that the proviso intends to exonerate the charterer from delay occasioned by superior force acting directly upon the discharge of that cargo, and not from the indirect action of such force, which by its operation on other vessels has caused a crowded state of the docks. If the respondents do not furnish the wharf room, or any other means and appliances which they are to supply, it is not enough for them to prove that they have taken reasonable measures to procure them. In short, the default does not mean negligence, but a failure of contract on their part, unless it is caused by a direct and immediate vis major, or something like it.

Upon this point, as upon the other, I find it impossible to distinguish the case from Davis v. Wallace. As the court there said that the respondents were bound to choose a wharf where the discharge could be at once proceeded with; so here I must say that these respondents were bound to discharge the vessel at the other part of their wharf, or at some other convenient wharf. The question in both cases is one of convenience, and the contract decides that question. I have held in one case, that a master who by his bill of lading was consigned to one wharf, which happened to be full, could not recover demurrage for time lost after he had been offered another suitable and convenient wharf, a ruling which fits this case exactly to Davis v. Wallace.

The measure of damages is the difference between the time the vessel was detained and quick despatch. There was very little evidence on this point; but what there was agrees with the well-known usage, which has been so often proved in this court, that coal is to be discharged at the rate of one hundred tons a day, Sundays excepted. This would give the nine days' demurrage asked for by the libellant. I have doubted whether I ought not to throw out one day, according to the same usage. But as that applies to all voyages to the port, and the first day is given to enable the consignee to find a wharf and the master to reach it, I have concluded, upon the whole, that this part of the usage does not fairly apply to a case in which the wharf is reached before the notice is given. Decree for the libellant for $450 and costs.