TERJE P. TERJESEN, Respondent, *against* OLIVER S. CARTER, *et al.*, Appellants.

(Decided April 5th, 1880.)

A stipulation in a bill of lading—"cargo to be discharged with quick dispatch, as customary, or to pay demurrage at £5 per day "—means that the manner of discharging shall be with as quick dispatch as is customary at the port of delivery ; and where the cargo has been accepted by the consignees, and by the custom of the port it is the duty of the consignees to find the place where the cargo is to be discharged, and they refuse so to do, they will be liable for demurrage arising from such refusal.

APPEAL from a judgment of a district court in the City of New York.

The action was brought to recover demurrage claimed under a stipulation in a bill of lading. The facts are stated in the opinion. Upon the trial in the district court the justice rendered judgment for the plaintiff. From the judgment the defendants appealed to this court.

CHARLES P. DALY, Chief Justice.—The stipulation in the bill of lading was in these words : " Cargo to be discharged with quick dispatch, as customary, or to pay demurrage at £5 sterling per day ;" and the defendants, as consignees, by accepting the cargo, were bound to comply with the requirements of this condition (*Morse* v. *Pesant*, 3 Abb. Ct. App. Dec. 321).

The word dispatch, it has been held, when employed in stipulations of this nature, means that the consignee is to take the cargo as rapidly as the vessel can deliver it (*Keen* v. *Audenried*, 5 Bened. 535 ; *Thatcher* v. *Boston Gas Light Co.*, 2 Lowell, 361 ; *Davis* v. *Wallace*, 3 Cliff. 123 ; *Sleeper* v. *Ping*, 8 Reporter, 357) ; and the employment of the words " as customary " manifestly means with as quick dispatch as is customary at the port of delivery.

The evidence was conflicting as to what the custom in this respect was in this port ; and we must assume that the judge relied upon the testimony of the plaintiff's witnesses as to the proof of it, which was that in the case of a vessel having a full cargo of iron on board, it was the duty of the consignee to whom the whole of the cargo was assigned to find a place for the vessel where she could proceed at once and discharge it ; one of the reasons for such custom being that iron was not allowed to be discharged upon certain docks, as they were not strong enough to sustain the weight of it, and that it was only on particular docks that it could be discharged. The consignees' clerk when he heard, as he testified, in the news-room, of her arrival, went and told the clerk of the agent of the vessel that the consignees owned the rails, but had no preference where to discharge them ; that the captain could put them out anywhere where they could be weighed. The next day the clerk of the vessel and the captain came to the clerk of the consignees, and said the captain could find no place where he could discharge the railroad iron, and wanted the consignees to designate some place where he should discharge it. The clerk answered that the consignees had no preference ; that he could put it out anywhere in the port of New York, or in Brooklyn, or in Jersey City, where it could be weighed. To which the captain said, it was for the consignees to find him a berth.

The evidence is that the clerk of the agent of the vessel and the captain, on the day following the arrival of the vessel, told the consignees that they were unable to procure a place for the ship, and would expect the consignees to find one ; to which they received substantially the same reply, that the consignees did not care where they discharged the rails, in the port of New York or in Jersey City ; declaring that if the ship did not discharge them the consignees would hold the owner responsible for any loss arising from their delay in doing so. It appears from this that they took the ground, which they sought unsuccessfully on the trial to establish, that it was the duty of the master of the vessel, or her agents here, to find a wharf where she could discharge the railroad iron ; and that the delay in the discharge of it and claim for demurrage arose from their refusal to do so. They had already sold the railroad iron, and they told the purchasers to send a lighter to receive it, as the Atlantic Dock, into which the vessel had gone, would not permit the iron to be landed at that dock. A lighter was accordingly sent, by which a considerable part of the cargo was taken away ; and the discharge of it was somewhat retarded by the fact that the crew of the vessel discharged it with a single winch, when it might have been more expeditiously discharged by the employment of stevedores ; for which, however, the judge appears to have made an allowance, for he did not give the full amount claimed by the plaintiff.

The case, I think, is disposed of by the proof of the custom, assuming, as I do, that the words " as customary " meant that the manner of discharging should be in accordance with the custom established in this port, and with which, it may be assumed, the parties who indorsed the stipulation upon the bill of lading were familiar. The case, therefore, can be affirmed on the ground that the judgment is sustained by the conclusion to which it must be inferred from his decision the judge came, that by the custom of the port it is the consignees, and not the master of the vessel or the agents of her owners, who are to find the place where the cargo, in such a case, is to be discharged, and had there been no reference in the stipulation to the custom, and the words had simply been to deliver with

quick dispatch, the conclusion, as matter of law, in my opinion, would have been the same (*Davis* v. *Wallace*, 3 Cliff. 123 ; *Randall* v. *Lynch*, 2 Campb. 352; *Rupp* v. *Lobach*, 4 E. D. Smith, 69 ; *Thacher* v. *Boston Gas Light Co.*, 2 Low. 361; *Cross* v. *Beard*, 26 N. Y. 85 ; *Sleeper* v. *Ping*, 8 Reporter, 357 ; *Ashcroft* v. *Crow Orchard Colliery Co.*, L. R., 9 Q. B. 540).

The actual delay was eleven days, but the justice only allowed for seven, which seems to cover any delay that could, upon the evidence, be attributed to the act of a master, and would cover the delay of Thanksgiving. If it did not cover Sunday, even then it would be right; for if there had been the dispatch stipulated for, the vessel could have gone to sea upon Sunday, which, being a foreign vessel, she could have done without violating any regulation of the port or of our laws.

The judgment should be affirmed.

J. F. DALY and VAN HOESEN, JJ., concurred.

Judgment affirmed.