FISH v. ONE HUNDRED AND FIFTY TONS OF BROWN STONE.

*(District Court, S. D. New York.   April 16, 1884.)*

1 DEMURRAGE—REASONABLE TIME—USAGE.

Where goods are taken on freight consigned to a consignee at a particular wharf, and there is either no bill of lading, or the time for delivery is not specified, and there is no contract on the subject, *held*, that the obligation in respect to delivery is that each party shall use reasonable diligence in performing his part to effect the delivery; and that in the absence of any special usage of the port or of the trade neither will be liable to the other for any detention of the vessel arising from any cause over which he has no control, and for which he is not in fault.

2. SAME—STIPULATION TO PROTECT VESSEL.

If the vessel would guard against detentions not arising from the fault of the consignee, she must protect herself by stipulating for a given period for the discharge after arrival, or for dispatch.   Where no such precautions are taken the consignee is not liable for detention, if not in fault.

3. SAME—CASE STATED.

Where the canal-boat J. B. A. took on board, at a port in Connecticut, a cargo of brown stone, deliverable at Sixty-third street pier, New York, and on arrival there was obliged to wait seven days for her turn to get a berth to deliver the cargo, through the accumulation of other vessels arriving before her, and Sixty-third street pier was known to the libelant to be usually crowded and a bad place, and the usage in the brown-stone trade was for the carrier to take the risk of such detention, *held*, that the consignee was not in fault, and that the libelant was not entitled to recover demurrage, both on that ground and on the ground of the usages of the trade.

Demurrage.

*J. A. Hyland*, for libelant.

*Henry Gildersleeve*, for claimants.

BROWN, J.   This libel was filed to recover $337 freight, $40 extra charges, and 7 days' demurrage, at the rate of $15 a day, on the delivery of 150 tons of brown stone, consigned to Morris & Cahill, at the Sixty-third street pier, this city.   The stone was shipped by the Middlesex Quarry Company, at Portland, Connecticut, on board the libelant's canal-boat J. B. Arnold, deliverable to the consignees at the Sixty-third street pier, New York.   The boat arrived near the pier on the sixth of December, 1881, and gave immediate notice to the consignees of her readiness to discharge.   There were numerous other vessels waiting their turn to get to the pier, and the Arnold was not able to get near enough to commence discharging until the 13th, when her discharge was commenced across another boat, which lay inside of her, and was finished on the noon of the 16th.   The consignees, Morris & Cahill, are stone cutters, who had a yard near Sixty-third street pier.   On the arrival of the Arnold they desired her captain to unload the stone directly upon their trucks, instead of upon the docks, agreeing to pay him for doing so $10 per day—the customary extra price.   The claimants do not dispute the items claimed for freight and four days' extra pay; the claim for demurrage is the only matter litigated in this suit.

The captain testified that two days would be a reasonable time to unload the boat directly upon the dock after commencing her discharge, and that one day's additional time would cover the further delay incident to loading upon trucks. The evidence shows that the time actually occupied after the delivery was commenced was only three full days; namely, the whole of the 13th and 14th, one-half of the 15th,—the other half of the day being stormy and unfit for work, —and one-half of the 16th. No unreasonable delay, therefore, is chargeable upon the claimants after the discharge was commenced; the additional day beyond two full days which would be required to unload upon the pier, must be deemed covered by the extra price agreed to be paid for unloading upon the trucks, since there was no unreasonable delay in receiving the cargo upon trucks as agreed. The only question remaining relates to the period between December 6th, when the vessel arrived, and the 13th, when she was able to commence her discharge.

There was no proper bill of lading in this case, but a mere direction where to unload, with a draft for the freight upon the consignees. Neither this paper nor the oral contract between the parties provided any time within which the delivery should be completed. The law in such case requires only that the consignee shall use reasonable diligence in the discharge of the cargo after arrival, and proceed in accordance with any established custom of the port or of the particular business, if any there be. A discharge according to such usage will be regarded as a discharge with reasonable diligence. *Houge* v. *Woodruff*, 19 Fed. Rep. 136, 137; *Aylward* v. *Smith*, 2 Low. 192.

Where the bill of lading is silent as respects the time in which the cargo is to be delivered, the only ground for holding the consignee liable is some fault on his part in the acceptance of the cargo. *Rodgers* v. *Forresters*, 2 Camp. 483; *Burmester* v. *Hodgson*, Id. 488. If, on the other hand, the bill of lading limits the time within which the delivery is to be made, that limitation is construed in maritime law as a stipulation for the benefit of the ship, designed to cast upon the consignee all risk of detention beyond the stipulated period; and no custom of the port would be allowed to override such a stipulation. *Randall* v. *Lynch*, 2 Camp. 352; *Philadelphia & R. R. Co.* v. *Northam*, 2 Ben. 1; *Gronstadt* v. *Witthoff*, 15 Fed Rep. 265, 271. It is in the power of the vessel always to provide against any loss on her part through detention from accidental causes at the place of discharge, if such be the intention of the parties, by inserting in the bill of lading the time within which the cargo must be received, or by other familiar provisions, such as that the vessel shall have "dispatch" or "quick dispatch," either of which would cast the risk of delay upon the consignee, (*Smith* v. *60,000 Feet of Yellow Pine Lumber*, 2 Fed. Rep. 396; *Thacher* v. *Boston Gas-light Co.* 2 Low. 361; *Davis* v. *Wallace*, 3 Cliff. 123; *Kearon* v. *Pearson*, 7 Hurl. & N. 386; *1,100 Tons of Coal*, 12 Fed. Rep. 185; *Choate* v. *Meredith*, 1 Holmes,

500; *Bjorkquist* v. *Steel Rail*, 3 FED. REP. 717;) but if none of these precautions are taken by the carrier, I see no ground upon which the carrier can charge the consignee with a breach of duty where the detention has arisen from causes of which neither has any control.

In the case of *Ford* v. *Cotesworth*, L. R. 4 Q. B. 127, BLACKBURN, J., says, (page 133 :)

"Where the act to be done is one in which both parties to the contract are to concur, and both bind themselves to the performance of it, there is no principle on which, in the absence of a stipulation to that effect, either expressed by the parties or to be collected from what they have expressed, the damage arising from an unforeseen impediment is to be cast by law on the one party more than on the other; and, consequently, we think that what is implied by law, in such a case, is not that either party contracts that it shall be done within either a fixed or a reasonable *time*, but each contracts that he shall use reasonable *diligence* in performing his part.   *   *   *   We think that the contract which the law implies is only that the merchant and ship-owner should each use reasonable dispatch in performing his part.   *   *   *   The delay having happened without fault on either side, and neither having undertaken by contract, express or implied, that there should be no delay, the loss must remain where it falls."

CLIFFORD, J., in the case of *Davis* v. *Wallace*, *supra*, intimates the same opinion.   "Delay beyond that," he says, (*i. e.*, the time necessary for unloading,) "if occasioned by natural cause over which the defendant has no control, may, perhaps, be excused in a case where there is no express contract as to time."   See *Carsanego* v. *Wheeler*, 16 FED. REP. 248; *Cross* v. *Beard*, 26 N. Y. 85.

The libelant in this case claims demurrage from the moment of arrival.   But even had the boat obtained a berth at once and been ready to discharge immediately, in the absence of stipulated lay-days, one day's time after notice is ordinarily allowed to the consignee to prepare for delivery of the cargo, which shows that the general obligation of the consignee is not to discharge immediately, but only an obligation to use diligence in doing so.   If a vessel were entitled to demurrage, as claimed by the libelant, in the absence of any stipulated time to discharge, when consigned to a particular dock, notwithstanding the fact that the detention arose from the accumulation of other vessels, or some other cause wholly beyond the consignee's control, the use of the special stipulations to which I have referred, such as "customary dispatch," or "quick dispatch," or a stipulated time for delivery, would be superfluous; and every such shipment, in effect, would become equivalent to an agreement for "quick dispatch."   Such a claim, it seems to me, is clearly untenable.   The obvious usages in shipping are to the contrary.   If there be no fault or unreasonable delay in the consignee's receiving the cargo, he cannot, in such cases, in reason or justice, be charged for detentions through causes for which he is in no way responsible; because the carrier has not taken the precaution to throw the risks of such detentions upon him, and because he has not undertaken to answer for them.   And where the carrier has undertaken to deliver the cargo at a particular dock, and

the place of delivery is known to be material to the consignee, as in this case, the latter is not required to accept a delivery at a different place, to his own loss, for the mere convenience of the carrier. The latter knowing the facts, and the liability to detention, must bear the risk, if he has not stipulated to the contrary.

The evidence, moreover, in this case satisfies me that it is the well-established custom in the brown-stone trade that the carriers take all risks of detention at the docks to which they are consigned. The stone-cutters, who are the customers and consignees of the quarry companies, have their stone-yards near the docks to which the stone is to be consigned. It is a matter of pecuniary importance to them that the stone be delivered at the dock specified, and not elsewhere. The shippers contract to deliver it there, and there the carriers agree to take and deliver it. Although these docks are known to be often crowded, causing serious detention of the vessels, yet in a long course of years no claims of demurrage have been made where there was no fault in the consignee, because such has been the general understanding in the trade, and frequently reiterated in the parol contracts when the stone is shipped. The evidence by the libelant as to the payment of demurrage in one or two instances shows that this arose through a difficulty between a consignee and a purchaser, and in reality confirms the usual custom. Sixty-third street, where this stone was to be delivered, was known to be specially liable to detentions; and this was known also to the libelant. This vessel was discharged in her turn; that, by the custom of the trade, was all that the libelant was entitled to demand, in the absence of any special provisions, either for dispatch or a limited number of days for delivery.

In both points of view, therefore, the claim for demurrage must be disallowed. The defendant's set-off for wharfage paid, at the rate of four dollars per day, on account of the vessel, cannot be sustained. The statute allows but fifty cents per day against canal-boats; and the answer expressly describes this boat as a canal-boat. The libelant is therefore entitled to the freight and extra charges, less two dollars wharfage, with interest and costs.