MELLOY *v.* LEHIGH & W. COAL CO.

*(District Court, S. D. New York.   December 26, 1888.)*

1. DEMURRAGE—LIABILITY OF FREIGHTER—ACCEPTANCE OF COAL ORDER.
   The defendants accepted their vendee's order to load coal upon the libelant's canal-boat "in turn," but "under the customs of the shipping point," and "without liability for delay or failure to load." The accepted order was given to the libelant's master, who proceeded with his boat to the shipping point, and waited three weeks for loading. On suit for demurrage, *held* (*a*) that, aside from the express contract, a freighter who undertakes to load a vessel is bound to reasonable diligence in loading, and the defense of want of privity of contract was overruled.

2. SAME—PRIVITY OF CONTRACT.
   (*b*) That the respondents' delivery of the order to the master, with the intent that it should be acted on, and his action accordingly, imported an implied contract with him to load according to the terms of the accepted order.

3. SAME—WILLFUL DELAY.
   (*c*) That the exemption from liability for delay or failure to load did not cover any delay or failure by the respondent's willful neglect or fault.

4. SAME—CUSTOM OF PORT.
   (*d*) That the custom of the shipping point authorized delay by the freighter until all the kinds of coal required could be loaded together.

In Admiralty. Libel for damages in the nature of demurrage.

*T. C. Campbell,* for libelant.

*Biddle & Ward,* for respondents.

BROWN, J.   The libelant sues to recover damages in the nature of demurrage for the alleged detention of the canal-boats H. C. Rew and Maggie Hager at Port Johnson, by not loading them in turn. On the 20th of June, 1888, Kurtz, Crook & Co., having purchased coal of the respondents, deliverable at Port Johnson, drew an order upon their sup-

erintendent at the New York office, directing them to load the canal-boat H. C. Rew with "Wilkesbarre coal, 100 tons broken, and 125 tons egg, deliverable to Buchanan Bros., 25th St. New York, North river." On the back of the order was a printed statement that the order was given upon the following conditions:

"*First.* The vessel named on this order shall take her regular turn at the shipping wharf, and shall be governed in all respects by the customs of the shipping point to which she is sent.

"*Second.* No liability for demurrage or other cause is to be incurred by J. D. Kurtz, Crook & Co., or by the cargo, or the consignees thereof, for delay in loading; such delay to be borne by the vessel."

The order, being presented at the defendant's office at New York, was stamped as usual:

"Accepted subject to the following conditions: The vessel receiving this order is to conform to the directions of the company's shipping agent at the point to which she is sent. No liability is to be incurred for delay, or failure in furnishing a load to the vessel."

The order was delivered by the respondents' agent to the captain of the Rew, who proceeded to Port Johnson, and filed the order with Mr. Martin, the respondents' shipping agent there, as customary, on the 21st day of June. He was not loaded until the 11th or 12th of July, and claims that three other boats arriving after him were loaded first, and that he was not loaded "in turn," as provided by the order, and by the custom of that shipping point. Substantially the same facts are alleged as regards the Maggie Hager, which reported later.

It is contended on behalf of the respondents that on such orders no direct action will lie by the master of the vessel detained, for lack of privity of contract; because the respondents' contracts in such cases, it is said, are solely with the drawers of the orders, *i. e.*, the vendees of the coal. The right of a vessel to damages for detention, however, need not rest on express contract. The maritime law makes it the duty of the freighter, or of the owner or consignee of goods, who undertakes to load or to discharge the ship, to do so with reasonable promptness, and it imposes on him a liability for the damages from detention arising from his negligence or unjustifiable delay. At common law, an action of trespass on the case would lie for this breach of duty. *Sprague* v. *West*, Abb. Adm. 548, 553; *Bacon* v. *Transportation Co.*, 3 Fed. Rep. 344; *Hawgood* v. *Tons of Coal*, 21 Fed. Rep. 681.

The present case is stronger. The defendants undertook and expressly agreed with Kurtz, Crook & Co. to load this vessel subject to the terms of the written contract. The contract, as accepted by the respondents, was delivered by them to the master, with the intent that he should act on it, and go to Port Johnson, and wait his turn for this coal. The master did so, relying upon this accepted order. The order was duly filed by the master at Port Johnson; and thus, by the contract with the drawer, the respondents became bound to load the vessel in turn, subject to the other conditions as to custom. While that order was outstanding, and the vessel was in waiting under it, Kurtz, Crook & Co. could not re-

quire the respondents to accept any other order for the same coal, or sue them for non-delivery under their original contract of purchase, so long as the conditions of the accepted order were fulfilled. The delivery of the accepted order to the master, under such circumstances, and with such intent, imported an implied contract with the master that if he would go to Port Johnson and wait his turn, subject to the other conditions also, he should be loaded with the libelant's coal. The exception, "no liability for delay or failure to load," does not include a willful, nor, in my opinion, a negligent, disregard of the contract; but only a delay or failure without the respondents' fault, or through the operation of some of the other conditions of the contract. The respondents, therefore, were not only bound under their ordinary maritime duty as freighters, to load the vessel without unreasonable delay,—that is, in this case, according to the express contract with the drawer,—but the implied contract created the same obligation. Upon either ground the vessel has a direct remedy against the freighter; just as she has a direct remedy against any owner of cargo that is bound to unload her, and who has induced her to submit to his direction. *Sprague* v. *West, supra; Railroad Co.* v. *Northam,* 2 Ben. 1; *Crawford* v. *Mellor,* 1 Fed. Rep. 638; *Houge* v. *Woodruff,* 19 Fed. Rep. 136, 137, and cases there cited.

The obligation to load in turn "under the custom of the shipping point," is shown not to require the shippers to load a part of the coal until they have got the other part of the cargo that the order requires. The Rew was to be loaded partly with broken coal, and partly with egg; both Wilkesbarre coal. She was not entitled, under the custom, to take her place "in turn," until the respondents had both kinds of coal with which to load her at once; and the proof does not show that the Rew could have been loaded at any time with both kinds of coal before the other three boats complained of were loaded. As to the George Albertson, claimed to have been loaded ahead, the proof is that her order was filed at the shipping point on the 30th of June, prior to the report of the Hager, and therefore entitled, apparently, to prior loading. One witness for the libelant says she did not arrive until after the Hager. Either the witness is mistaken, or there was some sharp practice by the other boat in falsely reporting her arrival, and in filing her order on the 30th of June, about which there can be no mistake, before she reached Port Johnson. The shipping agent testified that he had to rely upon the orders filed with him, and the reports of arrival. I think he was entitled to do so, as between different vessels, until notice of irregularity was given him in filing the order before the vessel's arrival, if such was the fact. Without such notice it was not to be expected that he should undertake to verify the reports of arrival made by the captains of the canal-boats when they file their orders, or ascertain that the boats are actually present. The boats are reported in considerable numbers, and lie at anchor at a distance, until their turn comes. If the boat previously reported did not actually arrive at that time, no notice of the fact appears to have been given to the shipping agent, or any complaint made of her lack of a prior right to load.

The libel must be dismissed; but in consideration of the long detention of the vessel, and her apparent right, the dismissal must be without costs.